THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| WAYNE A. HUSSAR, II,<br><br>Plaintiff,<br><br>vs.<br><br>MSP WARDEN JAMES SALMONSON and MSP'S THORNTON R.N.,<br><br>Defendants. | CV 18-00055-H-DLC-JTJ<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

The following motions are pending: (1) Defendants' Motion for Summary Judgment (Doc. 32); (2) Mr. Hussar's Motion for Summary Judgment (Doc. 36); (3) Mr. Hussar's Motion to File Conventionally (Doc. 39); and Mr. Hussar's Motion for Counter Lawsuit (Doc. 40).

Defendants' Motion for Summary Judgment should be granted based upon Mr. Hussar's failure to fully exhaust his administrative remedies. As such, Mr. Hussar's Motion for Summary Judgment and Motion for Counter Lawsuit should be denied. Mr. Hussar's Motion to File Conventionally will be granted as Mr. Hussar has been allowed to file conventionally throughout this litigation.

**I. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

### A. Standard

Summary judgment is appropriate if there is no genuine issue of material

1

fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). The party moving for summary judgment has the initial burden of showing there is no genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If the moving party makes a prima facie showing that summary judgment is appropriate, the burden shifts to the opposing party to show the existence of a genuine issue of material fact. *Id.* On summary judgment, all inferences should be drawn in the light most favorable to the party opposing summary judgment. *Id.* at 159.

By notice provided on September 6, 2019 (Doc. 35), Mr. Hussar was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998)(en banc); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

### B. Undisputed Facts[1]

When inmates arrive at MSP, they are required to attend orientation, which includes an explanation of the process and procedures of the grievance program. (Defendants' Statement of Undisputed Facts, Doc. 34 ("SUF") at ¶ 1.) Mr. Hussar completed orientation – including the orientation on the grievance process – at MSP on January 24, 2018. (SUF at ¶ 2.) During orientation, inmates

---

[1]Mr. Hussar did not file a statement of disputed facts in response to Defendants' motion as required by Local Rule 56.1(b). As such, the Court deems Defendants' facts undisputed unless otherwise disputed by Mr. Hussar in his other filings.

are informed that if they do not first exhaust their administrative remedies for classifications, grievances, or disciplinary decisions, they will be unable to challenge the issue in court. (SUF at ¶ 3.) Many inmates also communicate amongst themselves about the grievance process, how to use it, and the consequences of not using it. (SUF at ¶ 4.)

MSP Procedure 3.3.3, which implements DOC Policy 3.3.3, dictates the process whereby inmates may make complaints on grievable issues to MSP administration. (SUF at ¶ 5.) All the necessary procedures explaining the grievance process, including MSP Procedure 3.3.3 and DOC Policy 3.3.3, are available to inmates in the MSP inmate library. (SUF at ¶ 6.) The forms essential to file a grievance are available in the units, through the case managers, or from the Grievance Coordinator directly. (SUF at ¶ 7.)

According to MSP Procedure 3.3.3, an inmate must file a grievance for any "issues including, but not limited to health care… … and other standard grievance matters…" (SUF at ¶ 8.) The only exceptions, or "non-grievable issues," are "actions by outside entities not under the jurisdiction of the DOC," and "classification, disciplinary, and any other decision which is subject to a separate appeal procedure or administrative review process." (SUF at ¶ 9.)

There are four steps to the grievance procedure for health care grievances: (1) informal resolution, (2) formal grievance, (3) appeal to the Department Medical

3

Director, and (4) appeal to the DOC director.  (SUF at ¶ 10.)  A health care grievance must be submitted to MSP within five working days of the grievable incident or conduct, and each appeal step has timelines.  (SUF at ¶ 11.)

  MSP Procedure 3.3.3 expressly notifies each inmate that, if he fails "to advance to the next level of the grievance Program within the stated time limit, he will be considered to have forfeited the opportunity to exhaust his administrative remedies under the inmate grievance program."  (SUF at ¶ 12.)

  Mr. Hussar was transferred from the Dawson County Correctional Facility to MSP on January 9, 2018.  At that time, he was given the standard medical receiving screening for arriving inmates.  (SUF at ¶ 13.)  On January 16, 2018, Mr. Hussar filed an informal grievance stating he had a knee brace when he arrived at MSP, but it was taken from him.  He specifically stated, "I need my knee brace back A.S.A.P. to keep from injuring my fibula."  Following referral of the grievance to the infirmary, and processing as though it had been submitted on the correct form, the response of MSP Facility Health Administrator Shannon Maes stated, "This was addressed at your intake physical on 1/16/18."  The response was signed and dated by Maes on January 30, 2018.  Mr. Hussar's acknowledgement of receipt of the decision is dated February 20, 2018.  (SUF at ¶ 14.)

  Mr. Hussar filed a formal grievance on February 8, 2018, wherein he referenced his prior grievance, and discussed treatment recommendations for a

back brace, knee brace, and flat sole shoes. He requested that he be provided the braces and the shoes. MSP staff processed this grievance as though it was a properly filed formal grievance regarding his January 9, 2018 informal grievance. As such, Defendants acknowledge that Mr. Hussar successfully advanced his January 9, 2018 informal grievance to the formal grievance level. On March 8, 2018, MSP staff person Heidi Abbott responded, "You have an appointment scheduled with an MSP provider in the future to evaluate & discuss your requests. Please discuss at that appointment." Mr. Hussar acknowledged receipt of Ms. Abbott's response on March 14, 2018. (SUF at ¶ 15.)

On March 12, 2018, nursing and provider progress notes of prison medical staff record Mr. Hussar's evaluation appointment, including his explanations regarding the origins of his back injury, knee injury, previous treating physician's recommendations, and his request for a back brace, knee brace, special shoes, and an extra mattress. (SUF at ¶ 16.)

On March 27, 2018, the MSP Special Needs Committee discussed Mr. Hussar's requests as set forth in his grievances. In attendance at the meeting were Melisa Scharf DON, Edwards FNP, Dr. Rees, Ramona Chrisman CHST, Anita Thorpe, ADON, Chad Peterson Discharge, Leslie Thornton CC RN, Shanna Faldowski, Rn MDIU, and Janet Nelson RN mental health. The notes of the meeting indicate that Mr. Hussar's chart was reviewed, and the Committee made

the following determination: "Medical does not issue extra mattresses. Knee, back brace and shoes do not meet medical criteria at this time. Patient can work with unit." (Doc. 34-13 at 2; SUF at ¶ 17.)

On March 27, 2018, Defendant Thornton signed a form entitled, "In Regards to Your Request/Kite" which stated, "Special needs reviewed your chart and determined requests for back brace, knee brace, extra mattress and wide 12 shoes. You do not meet medical criteria for knee or back brace. Medical does not issue extra mattresses. Work with unit for shoes." (Doc. 1-2 at 2.)

On March 28, 2018, Mr. Hussar submitted another informal grievance stating he received the response from the Special Needs staff refusing his requests. He claimed his "medical criteria" was "having (3) crushed vertabra's [sic] & lower-spine, skollyosiss [sic] & arthritis in lower back & hips." (Doc. 34-11.) Mr. Hussar requested the following action: "for (special needs staff) [sic] to change their answer to my medical need's [sic] & issue the back brace & knee brace & thick sole shoes size 12 wide – OR – deal with a major complaint/ lawsuit."[2]

On April 18, 2019, MSP staff person Carl Johnson responded to the March

---

[2] Mr. Hussar filed a copy of this grievance with his Complaint. (Doc. 1-1 at 1.) That copy does not contain the information on the top of the form indicating whom of MSP staff the informal grievance was "Received by," or the "Date:," or the "Informal Gr. No." That copy also contains the following sentence in parentheses, "Letter to Warden is in revue & he is going to talk with his medical staff & change everything (his own words!)" (Doc. 1-1 at 1.) This sentence does not appear on Defendants' copy of this grievance and Defendants contend the sentence must have been written on to the copy of the grievance form retained by Mr. Hussar following his submission of the form for consideration of his grievance complaint. (SUF at ¶ 18.)

28, 2018 informal grievance stating, "You were reviewed for Special Needs 3/24/18. It was stated that you do not meet medical necessity for a knee brace, back brace, and extra mattress. You were asked to work with your unit on this." On April 24, 2018, Mr. Hussar acknowledged receipt of the response. Mr. Hussar did not attempt to advance this informal grievance to the next level of the grievance program. (SUF at ¶ 19.)

### C. Analysis

The Prison Litigation Reform Act ("PLRA")'s exhaustion requirement states:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). This means a prisoner must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Exhaustion is mandatory. *Booth*, 532 U.S. at 741; *Jones v. Bock*, 549 U.S. 199, 211 (2007). Under the PLRA, prison regulations define the exhaustion requirements. *Jones*, 549 U.S. at 218.

The defendant bears the ultimate burden of proving failure to exhaust. *See*

*Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005).  If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014).  Once the defendant has carried that burden, the prisoner must produce evidence demonstrating that "the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile."  *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (internal citations and quotation marks omitted).

"The ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'"  *Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016) (*citing Booth*, 532 U.S., at 737-738.)  Therefore, inmates must exhaust those "grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'"  *Id.* at 1859 (*quoting Booth*, 532 U.S., at 738, 121 S.Ct. 1819.)

Mr. Hussar filed grievances on January 16, 2018, February 8, 2018, and March 28, 2018 regarding the denial of his braces, but it is undisputed that he did not complete the grievance process because he did appeal any of these grievances to the Department Medical Director or the DOC Director.  Although Mr. Hussar

also filed Offender/Staff requests on March 15, 2018 (Doc. 1-1 at 4), March 28, 2018 (Doc. 1-1 at 7) and March 29, 2018 (Doc. 34-15) and Health Care Requests (Docs. 1-1 at 3, 34-16, 34-17), these submissions do not comply with the grievance procedure set forth by the Prison.

Mr. Hussar contends he constantly wrote medical requests, kites, and a letter to the Warden asking for his brace and knee sleeve (Doc. 37 at 1) but he presents no evidence to suggest that he completed the last two steps of MSP's grievance procedure with regard to this issue. As such, the Court finds that Mr. Hussar failed to exhaust his administrative remedies and Defendants' motion for summary judgment should be granted.

## II. MOTION FOR COUNTER LAWSUIT

Mr. Hussar also filed a Motion for "Counter Lawsuit on Defendants for 'Purjuy [sic] – Statements' and false Info. From another Inmates special-Needs Records Put on Plaintiff's medical Records." (Doc. 40.) Mr. Hussar contends Defendants put someone else's medical records on his file. It appears that Mr. Hussar is referring to the Special Needs Meeting Notes attached to Defendant Thornton's Affidavit (Doc. 34-13.)

Defendants have explained that this exhibit included the Special Needs Committee's discussion of a number of inmates' requests for special needs. Those inmates' names have been redacted and the only reference to Mr. Hussar's medical

requests appears on page two of that exhibit. (Doc. 34-13 at 2.) The references to other inmates' medical issues do not pertain to Mr. Hussar.

The Court finds that Defendants did not represent that the discussion of other inmates' medical needs referred to Mr. Hussar and did not commit perjury as alleged by Mr. Hussar. As such, the Motion for Counter Lawsuit should be denied.

Based upon the foregoing, the Court issues the following:

## ORDER

Mr. Hussar's Motion to File Conventionally (Doc. 39) is GRANTED.

Further, the Court issues the following:

## RECOMMENDATIONS

1. Defendants' Motion for Summary Judgment (Doc. 32) should be GRANTED based upon Mr. Hussar's failure to exhaust administrative remedies. The Clerk of Court should be directed to close this matter, enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure, and have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith. No reasonable person could suppose an appeal would have merit.

2. Mr. Hussar's Motion for Summary Judgment (Doc. 36) should be DENIED.

3. Mr. Hussar's Motion for "Counter Lawsuit on Defendants for 'Purjuy [sic] – Statements' and false Info. From another Inmates special-Needs Records Put on Plaintiff's medical Records" (Doc. 40) should be DENIED.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[3] 28 U.S.C. § 636. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 7th day of January, 2020.

      /s/ John Johnston
      John Johnston
      United States Magistrate Judge

---

[3] Mr. Hussar is entitled to an additional three days after the fourteen-day period would otherwise expire to file his objections.